18

Argued and submitted March 15, affirmed November 3, 1999

William STAATS
and Margaret Staats,
Trustees of the
William and Margaret Staats Living Trust,
and Mary Frederickson,
*Petitioners,*

*v.*

Benise NEWMAN,
Robert E. Whittier,
Todd Bezona, Valarie Adams, and
Water Resources Commission,
*Respondents.*

(PC 97-13; CA A102142)

988 P2d 439

John D. Sorlie argued the cause for petitioners. With him on the brief was Bryant, Lovlien & Jarvis.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Water Resources Commission. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance for respondents Benise Newman, Robert E. Whittier, Todd Bezona, and Valarie Adams.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Petitioners seek review of a final order of the Water Resources Department (department) revoking certain of their water rights on the ground that the rights had not been used for at least five years. They contend that the department erred in applying an incorrect standard of proof and in finding that they had not used their water rights. We affirm.

The relevant facts are not in dispute. Petitioners own a ranch and associated water rights allowing water to be diverted from several streams for irrigation. In 1997, respondents, who own or occupy neighboring property, filed affidavits with the department alleging that petitioners had not exercised their water rights since 1982. The department sent petitioners a notice of proposed cancellation of water rights. Petitioners filed a protest, and the department conducted a contested case hearing.

At the hearing, petitioners contended that they had been using their water rights to irrigate their land by means of ditches dug by a previous owner. The administrative law judge (ALJ) found that portions of the land had been properly irrigated and were therefore still subject to the existing water rights. But the ALJ found that much of petitioners' land was not irrigated or was irrigated from improper sources. She also found that many of the ditches that petitioners claimed to be using were in disrepair and that those that still could carry water were not subject to any control. Finally, the ALJ determined that most of the irrigation of petitioners' land occurred through "subirrigation," that is, naturally occurring "subsurface seepage and capillary action." Because applicable rules define "irrigation" as "artificial application of water," the ALJ concluded, as to those portions of petitioners' land, it had been shown by a preponderance of the evidence that petitioners had not irrigated and had forfeited their water rights through nonuse.

Petitioners filed exceptions to the ALJ's decision. In particular, petitioners argued that the ALJ should have required that nonuse be proved by clear and convincing evidence and that the ALJ's findings as to the nature of their use were not supported by the evidence. The ALJ rejected the

exceptions. She first concluded that, under the Administrative Procedure Act (APA), the appropriate standard of review in a contested case is a preponderance of the evidence. She next explained that, as to the nature of the use of petitioners' water rights, the evidence simply was in conflict and that she found certain testimony more persuasive than the evidence offered by petitioners. The department's final order adopted both of the ALJ's decisions.

■    On review, petitioners first contend that the department erred in requiring proof of nonuse of the water rights by a mere preponderance of the evidence. According to petitioners, because forfeiture generally must be shown by clear and convincing evidence, the department should have applied that standard in this proceeding. In support of their argument, petitioners cite *dictum* in *Rencken v. Young*, 300 Or 352, 711 P2d 954 (1985). The department contends that its decision was subject to the APA, which provides for a preponderance standard in the absence of a contrary directive in the applicable statutes.

ORS 540.610(1) provides:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the owner of a perfected and developed right ceases or fails to use all or part of the water appropriated for a period of five successive years, the failure to use shall establish a rebuttable presumption of forfeiture of all or part of the water right."

Whenever the department has reason to believe that forfeiture has occurred, it may send notice to the owner of its intention to cancel the water right. ORS 540.631. The owner then may protest the proposed cancellation and request a contested case hearing, which must be conducted in accordance with the contested case provisions of the APA. ORS 540.641(2). The APA does not specify a specific standard of proof for contested case hearings, but it does provide that:

"No sanction shall be imposed or order be issued except upon consideration of the whole record or such portions

thereof as may be cited by any party, and as supported by, and in accordance with, reliable, probative and substantial evidence."

ORS 183.450(5).

We have consistently held that, in the absence of an expressly contrary legislative directive, a preponderance standard of proof satisfies the requirements of ORS 183.450(5). Most recently, in *Gallant v. Board of Medical Examiners*, 159 Or App 175, 974 P2d 814 (1999), we examined the text and history of the statute in some depth to arrive at the conclusion that "in enacting ORS 183.450(5), the legislature intended to prescribe a standard of proof that corresponds to the preponderance standard." *Id.* at 183; *see also Sobel v. Board of Pharmacy*, 130 Or App 374, 379, 882 P2d 606 (1994), *rev den* 320 Or 588 (1995); *OSCI v. Bureau of Labor and Industries*, 98 Or App 548, 555, 780 P2d 743, *rev den* 308 Or 660 (1989).

*Rencken* is not to the contrary. At issue in that case was *which party* had the burden of proof in a cancellation of water rights proceeding, not the nature of the burden itself. After concluding that the proponent of cancellation has the burden of proof, the court cited ORS 183.450(3) as describing the applicable standard of proof. *Rencken*, 300 Or at 364. The court then observed in a footnote that *"[i]n the circuit court,* the burden of proving the forfeiture of a vested property right is by clear and convincing evidence." *Id.* at 365 n 12 (emphasis added). Clearly, the statement is *dictum*. Equally clearly, the court was not describing the burden that applies to a water rights proceeding that is controlled by ORS 183.450(3), but, rather, was establishing a contrasting burden that applies *"[i]n the circuit court,"* where, in the absence of a statutory standard of proof, the traditional equitable antipathy to forfeiture results in a more demanding standard. *See, e.g., Dunham v. Taylor*, 211 Or 618, 630, 317 P2d 926 (1957) ("Forfeitures are not favorites of the law, and the evidence to establish a forfeiture should be clear and conclusive."). We therefore reject petitioners' contention that a clear and convincing evidence standard applies in water rights cancellation proceedings.

■ Petitioners next contend that the department erred in concluding that their subirrigation did not constitute use of their water rights. Petitioners argue that "use" of a water right is accomplished by virtually any diversion and that the particular method is irrelevant. In support of their argument, petitioners rely on several early water rights decisions, in particular, *Hough v. Porter*, 51 Or 318, 98 P 1083 (1909), and *McCall v. Porter*, 42 Or 49, 70 P 820 (1902). The department contends that the extent to which a particular diversion constitutes "use" has been defined by administrative rule, the validity of which petitioners have not challenged. That administrative rule, as the department reasonably construes it, provides that subirrigation does not constitute "use." We agree with the department.

■ ORS 540.610(1) provides that the failure to "use" all or a portion of a water right can result in its cancellation. Not just any "use" of water qualifies. The use must be what is permitted in the water right itself. *Hennings v. Water Resources Dept.*, 50 Or App 121, 124, 622 P2d 333 (1981). In this case, petitioners' water rights are to divert water from certain streams for irrigation. The department has promulgated an administrative rule defining "irrigation" to mean

> "the artificial application of water to crops or plants by controlled means to promote growth or nourish crops or plants. Examples of these uses include, but are not limited to, watering of an agricultural crop, commercial garden, tree farm, orchard, park, golf course, play field or vineyard and alkali abatement."

OAR 690-300-0010(26). The department has construed that rule to mean that only "artificial application" of water constitutes irrigation and that naturally occurring subirrigation does not qualify.

■ Petitioners do not challenge the validity of the administrative rule itself. They challenge the department's interpretation of it as being inconsistent with prior cases. However, those cases predate the adoption of the rule. The department's interpretation of that rule is subject to highly deferential review. As long as the interpretation of an agency's own administrative rule is plausible, we are not at

liberty to reject it. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142-43, 881 P2d 119 (1994). In this case, petitioners do not explain why the department's interpretation is implausible, only that they disagree with it. We reject their contention that the department erred as a matter of law in construing the rule to exclude naturally occurring subirrigation.

■　Petitioners argue that, even so, the record does not support the department's finding that their use amounted merely to naturally occurring subirrigation. According to petitioners, there is abundant evidence in the record that the irrigation was not merely naturally occurring subsurface seepage and capillary action, but was instead a result of water flowing through man-made ditches. The department replies that its findings as to the nature of the use must be upheld if there is substantial evidence to support them and that there is such substantial evidence in the record of this case. Again, we agree with the department.

■　We review the department's findings of fact for substantial evidence. *Lentz v. Water Resources Dept.*, 154 Or App 217, 222-23, 962 P2d 41 (1998). Substantial evidence exists "when the record, viewed as a whole, would permit a reasonable person to make [a] finding." ORS 183.482(8)(c).

■　In this case, there was conflicting evidence as to the nature of petitioners' use of water on their property. The department weighed that conflicting evidence and ultimately found more persuasive the evidence contrary to petitioners' contentions. Specifically, the department found that any of the artificial ditches that still existed were incapable of controlling the flow of water through them. We have reviewed the record as a whole and conclude that the department reasonably could make that finding.

　　　Affirmed.